J-S66014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JENNIFER ANNE THOMAS | |
| Appellant | No. 1819 MDA 2015 |

Appeal from the Judgment of Sentence April 14, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0002779-2014

BEFORE:  BOWES, PANELLA AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 18, 2016**

Jennifer Anne Thomas appeals from the judgment of sentence of forty-eight hours to twelve months incarceration plus forty-eight months of probation, which was imposed following her conviction for two counts of cruelty to animals.  We affirm Appellant's convictions, but vacate her judgment of sentence and remand for resentencing consistent with this decision.

The facts underlying this matter are as follows.  On Thanksgiving Day, November 28, 2013, Appellant, her two children, and her dog Mocha, resided with Holland Bentley in his home.  Mr. Bentley's cousin, Brian Opsitnick, and Brian's wife, Roberta, resided in a camper on the property.  Since it was a holiday, Mr. Bentley's three children, and another guest, were

present for the festivities. Over the course of the day, Appellant became increasingly agitated as Mr. Bentley and his guest were using illicit drugs.

Appellant's dog, Mocha, grew unsettled as the day progressed. At some point, an altercation arose between Appellant and Mr. Bentley, who alleged that Mocha bit his guest. Mr. Bentley grabbed Mocha, kicked the dog, and attempted to remove it from the house. He implored Appellant to remove Mocha as well as her children from the property. Appellant, attempting to avoid eviction from Mr. Bentley's residence, seized a kitchen knife and stabbed Mocha in the neck, leaving a one-half inch in diameter puncture wound.

As the dispute escalated, police were dispatched to the house. Upon arrival, Appellant informed the officer that she had stabbed her dog and that it was bleeding to death in the bedroom. The officer observed bloodstains on Appellant's sleeve, and on the bed where the dog was being tended to by Appellant's children. As a result of this incident, Appellant was charged with summary and misdemeanor counts of cruelty to animals.

Following a jury trial, Appellant was convicted of both counts of cruelty to animals. At count one, the court sentenced her to forty-eight hours to twelve months incarceration, followed by forty-eight months of probation. As a condition of her probation, Appellant was prohibited from living with a male non-family member while owning a pet. Count two merged for the purpose of sentencing. She filed a timely post-sentence motion, which the

court denied, and a timely appeal. The court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied, and the court authored its Rule 1925(a) opinion. This matter is now properly before us.

Appellant raises four issues for our consideration:

I.      Did the Commonwealth provide sufficient evidence to prove beyond a reasonable doubt that [Appellant] willfully and maliciously maimed, mutilated or disfigured or cruelly or wantonly ill-treated her dog?

II.     Did the trial court err and abuse its discretion by denying [Appellant's] motion for a new trial given that the jury verdict was against the weight of the evidence?

III.    Did the court abuse its discretion by imposing an unnecessarily restrictive condition of probation prohibiting [Appellant] from owning a pet if she were at the same time to live with a non-family member male companion?

IV.     Did the court impose an illegal sentence on [Appellant] whereby her term of probation exceeded the statutory maximum term of incarceration for the offense?

Appellant's brief at 8.

Appellant's first issue challenges the sufficiency of the evidence. In reviewing such claims, our standard of review is well-settled:

In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction.

*Commonwealth v. Crawford*, 24 A.3d 396, 404 (Pa.Super. 2011) (citation omitted). Moreover, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Talbert*, 129 A.3d 536, 543 (Pa.Super. 2015).

Appellant contests the sufficiency of the evidence underlying her conviction for cruelty to animals pursuant to 18 Pa.C.S. § 5511. In pertinent part, the statute reads:

> (a)  Killing, maiming or poisoning domestic animals or zoo animals, etc.—
>
> . . . .
>
> (2.1)(i) A person commits a misdemeanor of the first degree if [she] willfully and maliciously:
>
> > (A) Kills, maims, mutilates, tortures or disfigures any dog or cat, whether belonging to [herself] or otherwise . . . .
>
> . . . .
>
> (c)  Cruelty to animals.—
>
> > (1) A person commits an offense if [she] wantonly or cruelly illtreats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which [she] has a duty of care, whether belonging to [herself] or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.

18 Pa.C.S. § 5511 (a)(2.1)(i)(A) and (c)(1).

- 4 -

Appellant asserts that the Commonwealth failed to prove that Mocha was maimed, mutilated, or disfigured since the dog was not permanently injured. She avers that Mocha recovered from her injuries without medical attention, and did so without any long term damage or scarring. Furthermore, Appellant maintains that she accidentally stabbed Mocha while attempting to restrain the animal. Hence, she posits that the puncture wound sustained by Mocha did not constitute cruelty graded as a misdemeanor, as there is no evidence to show Mocha was intentionally or maliciously maimed, mutilated, or disfigured.

In *Crawford*, *supra*, this Court interpreted the use of the terms "maim [or] mutilate," as used in 18 Pa.C.S. § 5511. The defendant in that case was charged with cruelty to animals after investigators discovered she was selling "Gothic cats" on the internet. Crawford had altered kittens with piercings and shortened tails in order to emulate a "gothic" appearance. She achieved this look by using a 14-gauge needle to pierce the animals' skin, and employed a technique called "docking," where bands are used to cut off the circulation to a portion of the tail in order to artificially sever the extremity. Following an investigation, Crawford was charged, and ultimately convicted, of cruelty to animals.

On appeal, Crawford argued that the statute was unconstitutionally vague, and that it did not give her sufficient notice that docking and piercing a kitten were prohibited actions as a person of normal intelligence would not

know that piercing or docking a kitten was considered "maiming, mutilating, torturing, or disfiguring an animal." *Id*. at 401. In finding that Crawford's conduct did violate the cruelty to animals statute, we employed the dictionary definition of each term to determine the plain meaning of the statute. We defined "maim" as "to mutilate, disfigure, or wound seriously." *Id*. We determined the definition of "mutilate" included "cut[ing] off or permanently destroy[ing] a limb or essential part[.]" *Id*.

Furthermore, we noted that the terms "willfully and maliciously" are clearly defined in the law. *Id*. First, observing that "willful" conduct is the same as "knowing" conduct, we held that a person acts knowingly with respect to a material element of a crime when:

> (i) If the element involves the nature of [her] conduct or the attendant circumstances, [she] is aware that [her] conduct is of that nature or that such circumstances exist; and (ii) If the element involves a result of [her] conduct, [she] is aware that it is practically certain that [her] conduct will cause such a result.

*Id*. at 401; 18 Pa.C.S. § 302(b)(2). A person's conduct is described as "malicious" if it reflects "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty." *Crawford*, *supra* at 402 (citation omitted).

In *Crawford*, we reasoned that the statute was not unconstitutionally vague since the terms at issue all gave fair notice of "an objective standard of reasonableness in the avoidance of infliction of suffering." *Id*. at 402. Thus, we concluded that "[Crawford's] acts of piercing the kittens' ears and

- 6 -

scruff with a needle commonly used to inject cattle as well as docking their tails by use of a rubber band seems to obviously come within the language of the statute." *Id*. Notably, we determined that "the action of piercing could permanently damage [the cat's ear] and qualifies as mutilation, which is prohibited by statute." *Id*. at 403.

Instantly, three witnesses recounted Appellant's behavior following her dispute with Mr. Bentley. Mr. Opsitnick testified that he was in the backyard when Appellant exited from the backdoor yelling and wielding a knife. N.T. Trial, 3/16/15, at 25. He related that Appellant declared, "I just F-ing stabbed my dog. I just F-ing stabbed and killed my F-ing dog." *Id*.

Officer Matthew Woodruff, the first officer to respond to the domestic dispute, observed the injury to Mocha's neck, describing it at trial as a puncture wound about a half inch in diameter. It went through several layers." *Id*. at 31. Upon encountering Appellant, Officer Woodruff relayed that Appellant indicated she had stabbed the dog, and that it "was bleeding out on the bed." *Id*. at 32. Although Appellant did not directly state that she wanted to kill Mocha, Officer Woodruff noted that Appellant "was told to take the dog and leave so she stabbed the dog[.]" *Id*.

Additionally, Officer Chad McClure testified that he spoke with Appellant at her home the next morning regarding a matter unrelated to this case. Appellant warned the officer that Mocha had to be let out, and when the officer questioned whether the dog was friendly, she responded, "if you

act funny, it could be a problem." *Id*. at 41. Officer McClure replied that he "didn't want to shoot her dog in her house," to which Appellant intimated, "I would appreciate it if you did." *Id*.

When viewing this evidence in the light most favorable to the Commonwealth as the verdict winner, we find it sufficient to support Appellant's conviction. The *Crawford* court did not premise its decision upon the presence of permanent injury, as suggested by Appellant, but discussed the permanency of the animal's injury only in finding it had been "mutilated," rather than "maimed." Here, the Commonwealth offered testimony indicating that Appellant stabbed Mocha in the neck. Given this evidence, the jury was free to find that a deep puncture wound to a sensitive area like the neck is sufficiently serious to constitute "maiming" under the statute. *Crawford*, *supra*. The fact that Mocha has since recovered from those injuries does not negate Appellant's culpability, but demonstrates only that she did not "mutilate" the dog pursuant to *Crawford*.

Following the incident, Appellant did not seek medical care for the dog. Appellant's children tended to Mocha as she left it to "[bleed] out." N.T., 3/16/15, at 33. She did not appear remorseful, but instead bluntly relayed her actions to other people in the house and to the police. The jury could have reasonably inferred from Appellant's statements and behavior that she willfully stabbed Mocha. Thus, Appellant's sufficiency challenge fails.

Appellant next raises a challenge to the weight of the evidence. A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Mucci*, 143 A.3d 399, 410 (Pa.Super. 2016). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Id*. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id*. Moreover, resolving the weight of the evidence is solely for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa.Super. 2013).

Our standard of review when confronted with a weight of the evidence claim is dedicated to reviewing the trial court's exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. *Mucci*, *supra* at 411. In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id*. (citation omitted).

Appellant asserts that, insofar as the Commonwealth's proffered evidence is inconsistent with her version of events, the jury should have

credited her testimony over the four witnesses called by the Commonwealth. She maintains that Mr. Opsitnick perjured himself by claiming he called police, and that, contrary to his testimony, Appellant never told him she stabbed her dog. Appellant contends that the Commonwealth's evidence amounts to mere speculation, and that the jury should have believed her when she claimed to have accidentally wounded Mocha.

The trial court denied Appellant's motion for a new trial based on the weight of the evidence finding that the verdict did not shock its conscience. The record reveals no abuse of discretion. Three witnesses, including two police officers, testified that Appellant made incriminating statements regarding her treatment of Mocha. Appellant did not challenge that she stabbed Mocha, but rather, argued that she accidentally injured the dog in the heat of the altercation. When confronted with inconsistencies in her testimony, Appellant claimed either that other witnesses lied, or that she no longer remembered the events in question. Upon review of the record, no abuse of discretion on the part of the trial court in denying Appellant's motion for a new trial on this basis.

Appellant's third issue disputes the discretionary aspects of her sentence. We note, "there is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa.Super. 2013) (citations omitted). An "appeal is permitted only after this Court determines that there is a substantial

question that the sentence was not appropriate under the sentencing code." *Id*. A defendant presents a substantial question when he "sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Id*. Furthermore, "in order to properly present a discretionary sentencing claim, a defendant is required to preserve the issue in either a post-sentence motion or at sentencing and in a court-ordered Pa.R.A.P. 1925(b) concise statement." *Id*. Moreover, on appeal, the defendant "must provide a separate statement specifying where the sentence falls in the sentencing guidelines, what provision of the sentencing code has been violated, what fundamental norm the sentence violates, and the manner in which it violates the norm." *Id*.

Appellant preserved this issue in her post-sentence motion, Pa.R.A.P. 1925(b) statement, and in a Pa.R.A.P. 2119(f) statement in her brief. Appellant's Rule 2119(f) statement alleges the probation condition imposed by the sentencing court is not reasonably related to her rehabilitation. Since Appellant argues that her sentence is inconsistent with 42 Pa.C.S. § 9754(c), she has raised a substantial question. *See Commonwealth v. Fullin*, 892 A.2d 843 (Pa.Super. 2006) (holding that appellant who challenges condition of probation pursuant to 42 Pa.C.S. § 9754 raises a substantial question).

The probation condition in question reads:

> [Appellant] is to follow and abide by the written conditions of Probation and Parole as adopted by this Court, and specifically may not live, cohabitate, with a non-family member male and have Mocha or any other pets in that co-habitation environment.

Sentencing Order, 4/16/15, at ¶3. Specifically, Appellant assails the court's determination that Appellant "hurt the dog because of the influence of the 'bad boys' in her life." Appellant's brief at 34. Insofar as conditions on probation are intended to deter repeat behavior, Appellant maintains that the court's conclusion is unsupported by the record, and in any case, she has rectified her situation by moving in with her parents.

The imposition of conditions on probation is within the discretion of the sentencing court. **Commonwealth v. Hall**, 803 A.3d 1204, 1215 (Pa. 2013). However, "such conditions must be reasonable and devised to serve rehabilitative goals, such as recognition of wrongdoing, deterrence of future criminal conduct, and encouragement of future law-abiding conduct." **Id**.; **see** 42 Pa.C.S. § 9754. Furthermore, the court may compel the individual "to satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of [her] liberty or incompatible with [her] freedom of conscience." 42 Pa.C.S. § 9754(c)(13).

Upon review of the record, we find the court did not abuse its discretion in prohibiting Appellant from cohabitating with any male non-family member while owning a pet. In supporting its decision, the trial court stated:

[Appellant] attempted to kill Mocha by stabbing simply because [Mr. Bentley] did not like the animal and attempted to sacrifice the dog's life so that she could continue to reside with caustic [Mr. Bentley]. The condition was imposed to prevent such a situation from arising again . . . [Appellant's] life choice to be with "bad boys" is her own, but she shall not be in the position to again abuse an animal while under this sentence.

Trial Court Opinion, 10/23/15, at 6.

Instantly, it is clear that Mocha's presence was a source of contention among Appellant, Mr. Bentley, and Mr. Opsitnick, and specifically that the dog provoked the dispute at the heart of this matter. Appellant testified to Mocha's recalcitrant behavior, stating, "If you are aggressive towards her, she will definitely be aggressive towards you." N.T., 3/16/15, at 52. Appellant added, "I have never had any problems with [Mocha] with any children. Adults are different." *Id*. The court noted that Appellant's children had a strong bond with Mocha, and that, since the source of controversy for both Appellant and Mocha stemmed from interactions with adult males, totally depriving Appellant from pet ownership was unnecessary if she was not again placed in a position where she had to choose between the two. We find this probation condition reasonably related to Appellant's rehabilitative needs as it is devised to deter future cruelty to animals. Hence, the trial court did not abuse its discretion in this regard.

Appellant's last issue assails the legality of her sentence. Our standard of review in determining the legality of sentence is as follows:

If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

**Commonwealth v. Hall**, 994 A.2d 1141, 1144 (Pa.Super. 2010) (citation omitted). Appellant was convicted of two counts of cruelty to animals. Count 1, pursuant to 18 Pa.C.S. § 5511(a)(2.1)(i)(A), is a misdemeanor of the first degree. Count 2, pursuant to 18 Pa.C.S. § 5511(c)(1), is a summary offense. The trial court sentenced Appellant to no less than forty-eight hours to twelve months of incarceration followed by forty-eight months of probation.

Generally, a first-degree misdemeanor carries a statutory maximum term of imprisonment of five years. 18 Pa.C.S. § 1104. However, Appellant's sentence is governed by 18 Pa.C.S. § 5511(a)(2.1)(ii), which reads in pertinent part, "[a]ny person convicted of violating the provisions of this paragraph shall be sentenced to pay a fine of not less than $1,000 or to imprisonment for not more than two years, or both." The court cannot impose a probationary period in excess of the maximum term to which the defendant could be confined. **See** 42 Pa.C.S. § 9754(a).[1] As the

_____

[1] Section 9754(a) states, "In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum

*(Footnote Continued Next Page)*

probationary period imposed upon Appellant exceeds the statutory maximum of two years that is outlined in § 5511(a), she is entitled to relief.[2]

Accordingly, we vacate Appellant's judgment of sentence and remand this matter for resentencing consistent with this decision.

Judgment of sentence vacated and remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016

---

*(Footnote Continued)* ————————

term for which the defendant could be confined, and the authority that shall conduct the supervision." 42 Pa.C.S. § 9754(a).

[2] The Commonwealth concedes that the sentence imposed at Count one exceeds the statutory maximum under § 5511(a)(2.1)(ii).